UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JUSTINO M. RAMOS, *pro se,*

    Petitioner,

v.                                                                                          CASE NO:  8:11-CV-1791-T-30EAJ

SECRETARY, DEPARTMENT OF
CORRECTIONS and ATTORNEY
GENERAL, STATE OF FLORIDA,

    Respondents.
_____/

## ORDER

Petitioner Justino M. Ramos ("Ramos"), an inmate in the Florida penal system proceeding *pro se*, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. #1).  The Court has considered the petition, Respondent's Response (Dkt. #25) and Petitioner's Reply (Dkt. #40).  Upon review, the Court determines that the petition is due to be denied.

## BACKGROUND

The factual portion of the background is taken from Ramos' brief on direct appeal in state court (Exh. 2).

> On September 26, 2004, Gina Villegas lived at an apartment complex on 1068 North Keene Road in Clearwater.  Ms. Villegas had known Mr. Ramos since 1993, and they had one child together.  Ms. Villegas said she and Mr. Ramos had lived together in the past until their relationship ended in 1999 or 2000.  Ms. Villegas obtained custody of their son.  In July of 2004, Ms. Villegas obtained a permanent injunction against Mr. Ramos.  She said Mr. Ramos

knew about the injunction and it forbade him from coming close to her or her son's school. The injunction was introduced into evidence. The injunction forbade Mr. Ramos from coming within 500 feet of Ms. Villegas.

At about 8:30 p.m. on September 26, 2004, Ms. Villegas was in her two-story apartment with her son and boyfriend. According to Terry Jones, a resident in the same apartment complex, the power was out due to the effects of a hurricane. Mr. Ramos knocked hard on the door. Ms. Villegas did not let him in. Mr. Ramos climbed to the upstairs window where his son's room was. Then she heard a knocking in the back window in the back of the building. Ms. Villegas opened the vertical blinds and saw Mr. Ramos' face. He said "There is somebody in there, there is a man in there." Ms. Villegas admitted there was but she told Mr. Ramos he should (sic) be in her apartment. She told him to go away. He told her to step back, and then he broke the window with his feet. Ms. Villegas was hit in the face with glass. Ms. Jones, heard the sound of the window breaking and seconds later Ms. Jones heard a woman screaming and crying. Ms. Jones heard the woman yell the word "Policia." Ms. Jones called 911. A tape of that call was played for the jury.

Another neighbor, Valerie Ruehl, said Ms. Villegas lived across from her and Ms. Ruehl heard Ms. Villegas and her boyfriend arguing. Ms. Villegas was very upset, "yelling and screaming almost to the point of being hysterical." She heard Ms. Villegas yelling, "por favor, pro favor, he's going to kill me, help me, he's going to kill me." Ms. Ruehl called 911. A tape of that call was played for the jury.

Mr. Ramos entered the apartment and proceeded to the kitchen. He grabbed a big knife used for meat-cutting and he asked where the other person in the apartment was at. Ms. Villegas was scared and feared Mr. Ramos had "lost his mind." Ms. Villegas tried to block Mr. Ramos and put her hands on his hands. She was crying and screaming trying to get the knife from Mr. Ramos. Mr. Ramos told her he would cut her because he could not see the other person. Ms. Ramos' (sic) friend opened the door and left the apartment. Ms. Villegas' hands were cut by the knife and blood from the cuts got onto her clothes. Pictures of the wounds were introduced to the jury. Mr. Ramos went outside with Ms. Villegas still grabbing him. Somebody came and saw them "fussing with the knife." He asked them what they were doing. Mr. Ramos dropped the knife to the ground and ran away.

Exh. 2, pp. 2-4.

Ramos was charged with two felony offenses, burglary and aggravated assault, and one misdemeanor offense, the violation of a domestic violence injunction. He was found guilty by a jury and sentenced as a prison releasee reoffender to a minimum mandatory prison term of fifteen years on the burglary count, five years on the aggravated assault count, and time served for violating a domestic violence injunction, with all sentences to run concurrently.

Ramos appealed. The state appellate court *per curiam* affirmed the judgment and sentence without written opinion on June 23, 2006. *Ramos v. State*, 933 So. 2d 531 (Fla. 2d DCA 2006) [table]. Ramos did not seek rehearing or petition the United States Supreme Court for certiorari review.

Ramos timely filed the instant petition on June 23, 2011, raising four grounds:

**Ground One:** Whether the Florida state courts abused their discretion where the state court's decision rest upon a clearly erroneous finding of facts, an errant conclusion of established federal law and improper application of facts.

**Ground Two:** Whether the Florida state court's determination of ineffective assistance of counsel claim summarily denying post-conviction motion was contrary to, or involved an unreasonable application of a clearly established federal law.

**Ground Three:** Whether the Florida court's determination of ineffective assistance of counsel claim summarily dismissed was contrary to, or involved an unreasonable application of a clearly established federal law.

**Ground Four:** Whether the Florida state court's determination of ineffective assistance of counsel claim summarily denied was contrary to, or involved an unreasonable application of a clearly established federal law.

## STANDARD OF REVIEW

The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*. at 690.

Petitioner must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691-92. To meet this burden, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

## DISCUSSION

**Ground One:**   Whether the Florida state courts abused their discretion where the state court's decision rest upon a clearly erroneous finding of facts, an errant conclusion of established federal law and improper application of facts.

In ground one, Ramos complains that the state sentencing court abused its discretion by sentencing Ramos as a prison releasee reoffender without making an oral pronouncement on the record that it was finding Ramos to be a prison releasee reoffender. He claims this was "a clearly erroneous finding of facts, (and) an errant conclusion of established federal law." To the contrary, sentencing one as a prison releasee reoffender is a matter of state law under Florida Statute § 775.082(9). Errors in the application of state law are to be resolved on direct appeal. It is up to the state courts to determine what its law is and how it is to be applied.

This Court does not sit as an appeals court to determine issues of the application of state procedures. Only if an error rises to the level of fundamental unfairness does it implicate the federal constitutional due process rights of an individual to be determined on habeas review by this Court. *Osborne v. Wainwright*, 720 F. 2d 1237, 1238 (11th Cir. 1983).

A federal court may not review a state court's purported failure to adhere to its own sentencing requirements. *Branan v. Booth*, 861 F. 2d 1507 (11th Cir. 1988).

Insofar as Ramos' due process rights are concerned, the sentencing hearing was conducted in the presence of Ramos and his counsel. The documents verifying the facts necessary to qualify Ramos as a prison releasee reoffender were admitted into evidence and defense counsel admitted that the documents were sufficient to qualify Ramos as a prison releasee reoffender prior to the court pronouncing sentence. In particular, the following colloquy took place at the sentencing:

> THE COURT: That's all right. Are there matters that the State would like to bring to the attention of the Court relative to sentencing?
>
> MS. KENNY: Yes, Your Honor. First and foremost, this is a prison releasee reoffender case, and the State does have documents now to present and place into evidence, including the record from the Office of Executive Clemency stating that this defendant has not been granted a pardon - - has not been granted a pardon, has not had his civil rights restored and also a copy of the prior underlying offense that made it PRR, and a DOC statement under Florida seal certifying his last release date.
>
> THE COURT: And his last release date was?
>
> MS. KENNY: It was on January 30, 2004.
>
> THE COURT: For the record, these offenses were - - he was arrested on October the 1st of '04, correct?
>
> MS. KENNY: That is correct. The prior offense that made him a PRR status was an unlawful sex act with a minor. He also had one prior misdemeanor battery. Judge, as this Court is

>   aware from the facts of this case, this is a victim that's still very much in fear of him. He's continued to contact her since the injunction and doesn't seem to have any regard for the law in that sense.

As the Court knows, it is a minimum mandatory with regards to the 15 years, and there's no discretion otherwise, and the State would just ask that the Court follow up with that sentencing at this time.

THE COURT:   All right. Ms. Rumph, have you examined these documents?

MS. RUMPH:   No, Judge, I have not seen them. I was aware of the notice, and I did receive a notice of enhanced penalty, but I didn't - - have not seen those.

MS. KENNY:   I can provide her with copies right now just to review.

THE COURT:   Yeah, if she wants to, as I go through them, ask you to make sure everything is in order. I've examined the documents from the State of Florida Office of Executive Clemency. Also the certificate of our clerk on a judgment and sentence in Case No. 01-15921CFANO, and also the affidavit from the correctional services administrator, Joyce Hobbs, from the Florida Department of Corrections that indicates a release date on that case of January 30, 2004. Does the defense want to be heard on those?

MS. RUMPH:   No, Judge. I have also now reviewed them.

THE COURT:   Okay.

* * * *

THE COURT:   Okay. Are there any matters that the defense would like to address the Court on relative to sentencing?

MS. RUMPH:   Judge, I know that the Court obviously has no choice in a minimum mandatory of 15. We ask that you do not go

> beyond that for Mr. Ramos exercising his right to a trial. There was no offer presented prior to trial under the 15.

Sentencing transcript, Volume 3, pp. 280-284.

The Court concludes that Ramos' due process rights were not violated and therefore this ground fails for lack of merit.

**Ground Two:** Whether the Florida state court's determination of ineffective assistance of counsel claim summarily denying post-conviction motion was contrary to, or involved an unreasonable application of a clearly established federal law.

In ground two, Ramos claims that his lawyer was ineffective for failing to object to the Court's reading the standard burglary statute to the jury rather than just the portion that he contends was applicable to him. He does not claim that the instruction was an erroneous instruction of the statute as a whole.

One can violate Florida's burglary statute in one of two ways: (1) by entering a dwelling without permission with an intent to commit an offense, or (2) by remaining in a dwelling after consensual entry has been withdrawn with an intent to commit an offense therein. Ramos argues as follows:

> By just reading the burglary statute applicable to the time of petitioner's alleged offense, we logically conclude that in Florida on 2004, burglary of a dwelling is committed in two (2) different ways:
>
> 1) by entering a dwelling without permission with an intent to commit an offense therein.
>
> 2) by remaining in a dwelling after consensual entry has been withdrawn with an intent to commit an offense therein.

> Therefore, when the facts demonstrate in a burglary trial that the entry was without permission, the instruction should not include the phrase "remaining in" as it wrongly allows conviction based on an intent to commit an offense after entry.
>
> The fact presented during petitioner's jury trial are as follows: (1) on September 26th, 2004, Gina Villegas resided in Clearwater, Florida; (2) on that evening the petitioner broke into Ms. Villegas' dwelling by means of kicking in a back window; (3) at the time of petitioner breaking in, he has absolute no consent or permission by the victim, or someone authorized by her to enter into her property.
>
> After all evidence has been presented, and all of the parties rest their cases, the State court proceeded to charge the jury with an erroneous, confusing, misleading, and obsoleted instruction, in which the State court included the phrase "remaining in" without objection of defense counsel, Sarah J. Rumph.

Petition (Dkt. #1), p. 13.

> The state post-conviction court denied this claim and said:
>
> Under claim B, the Defendant alleges that counsel was ineffective in failing to object to the standard burglary jury instruction. The Defendant complains that there was no evidence that he remained in the residence after the revocation of consent, and that the "remaining in" language in the jury instruction was unnecessary and confusing. Whether the Defendant committed the offense of burglary by entering a structure without consent or remaining within the structure without consent was a question for the jury. The Defendant has identified nothing about the jury instruction that was legally improper such that counsel should have raised an objection. The court finds the claim asserted under claim B to be legally insufficient. This claim shall therefore be denied.

Exhibit 10, Volume 1, R. 17-18.

Once again, whether jury instructions properly set forth state law is a matter for the state to determine. It is not a matter for federal habeas review unless an erroneous instruction so infects the entire trial that the resulting conviction violates due process. *Henderson v.*

*Kibbe*, 431 U.S. 145 (1977).  Here, Ramos has failed to show that the instruction given was erroneous, much less so infirm as to make his trial fundamentally unfair.  He has not shown that the state post-conviction court erroneously applied federal law in its ruling.  Therefore, ground two fails.

**Ground Three:**   Whether the Florida court's determination of ineffective assistance of counsel claim summarily dismissed was contrary to, or involved an unreasonable application of a clearly established federal law.

In ground three, Ramos claims that his lawyer was ineffective for providing ineffective assistance because she failed to call the victim's landlord as a witness.

To be facially sufficient, a petition for post-conviction relief asserting ineffective assistance of counsel for failing to call a witness at trial must include the following allegations:   (1) the identity of the prospective witness, (2) the substance of the witnesses' testimony, (3) an explanation as to how the omission of this evidence prejudiced the outcome of the trial, and (4) that the witness was available to testify.  *Highsmith v. State*, 617 So. 2d 825 (Fla. 1st DCA 1993); *Williamson v. State*, 559 So. 2d 723 (Fla. 1st DCA 1990).  Ramos failed to state in his post-conviction motion that the victim's landlord was available for trial, and, for that reason, the state post-conviction court summarily denied that ground.  Ramos has failed to show how the post-conviction court's ruling is contrary to federal law and therefore the ground fails to meet the requirements of AEDPA.

Second, Ramos fails to show how the testimony of the landlord would have altered the outcome of the case.  Ramos acknowledges in his petition that the landlord would not have testified that he lived in the residence at the time of his break-in, only that he had lived

there at some previous time. This testimony obviously would not have overcome the other evidence that Ramos had kicked in the window to gain entry to the residence, threatened the victim with a knife, and ran away when confronted by a neighbor. Therefore, even had Ramos post-conviction motion been facially sufficient, it would have failed for not showing any deficient performance on the part of his trial counsel.

This ground lacks merit and therefore will be denied.

**Ground Four:** Whether the Florida state court's determination of ineffective assistance of counsel claim summarily denied was contrary to, or involved an unreasonable application of a clearly established federal law.

In ground four, Ramos contends his counsel was ineffective for failing to file a motion to suppress the knife from coming into evidence. Specifically, he argues:

> The victim testified that the petitioner entered her residence, went to the kitchen and obtained a knife which they began to struggle with, and this supposedly resulted in her being cut. She also testified that she cleaned the knife prior to the police arrival.
>
> Counsel should have filed a motion to suppress the knife and any mention of the knife thereof as the result of the victim altering the original condition of the evidence.
>
> Had the victim not altered the original condition of the evidence, the police would have obtained the knife in the original condition when the alleged offense took place. The police would have been able to have the knife processed for fingerprints and blood test within an forensic expert custody, and this would have exonerated the petitioner.
>
> It is (sic) was highly prejudicial; to the petitioner have the victim cleaning the evidence prior to police arrival, and at the same time, the State Attorney using the same altered evidence against him to obtain in a conviction during his trial.

Petition (Dkt. #1), p. 24.

Ramos cites to no cases to support his contention that the victim's washing of the knife would have rendered it inadmissible into evidence. In fact, he is wrong on this point. The victim's identification of the knife as the weapon used was sufficient for it to be admissible whether or not it had been washed. And, even if the knife were not admitted into evidence, the remaining evidence was sufficient to support the conviction. Therefore, Ramos has failed to show prejudice.

This ground lacks merit and will be denied.

## **CONCLUSION**

Since all four grounds lack merit, the petition will be denied.

It is therefore ORDERED AND ADJUDGED that:

1. The petition for writ of habeas corpus (Dkt. #1) is DENIED.

2. The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE** and **ORDERED** in Tampa, Florida on October 29, 2012.

/s/ James S. Moody, Jr.
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies Furnished To**:
Counsel/Parties of Record

*F:\Docs\2011\11-cv-1791.deny 2254.wpd*